THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| COUNTRY MUTUAL INS. CO., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 2:13-cv-00108-RWS |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| TITEFLEX CORPORATION, and THOMAS OIL COMPANY, | : : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF COUNTRY MUTUAL INSURANCE COMPANY'S
MEMORANDUM IN OPPOSITION TO NON-PARTY
GAS EQUIPMENT COMPANY'S MOTION TO QUASH
OR MODIFY SUBPOENA AND MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE**

Plaintiff County Mutual Insurance Company files the following Memorandum in Opposition to Non-Party Gas Equipment Company's Motion to Quash or Modify Subpoena:

**I.     BACKGROUND FACTS**

This case arises from the August 21, 2009, fire at the home of Jimmy and Brenda Allen, which was insured by Plaintiff County Mutual Insurance Company. Plaintiff alleges that the fire was caused by the failure of the "Gastite" brand corrugated stainless steel (CSST) gas piping system installed in the home. Specifically, Plaintiff alleges that the Gastite CSST became energized during a

lightning storm and that the electrical energy perforated the CSST, releasing and igniting the gas. Amended Complaint, ¶¶ 12-13.

Plaintiff claims against Defendant Titeflex, the manufacturer of the Gastite CSST, are based upon allegations that Titeflex was negligent in the "development, production and marketing of the CSST." *Id.* at ¶ 20. Specifically, among other things, Plaintiff alleges that Titeflex "[f]ailed to warn the Allens and installers of its product of the substantial risk of fire or similar peril presented by the normal use of [CSST]." *Id.* at ¶ 21(d).

During discovery, it has been established that the Gastite CSST product should be installed only by installers certified by the manufacturer, Titeflex. Titeflex's own "Design and Installation Guide" states that "the installation of Gastite flexible gas piping must be performed by a qualified installer who has successfully completed the Gastite training program." Smith Depo., Ex. 2, §1.1.

The CSST in question was installed by Thomas Oil Company. However, the Thomas Oil Company employees who installed the CSST were not certified by Titeflex to install Gastite CSST. In fact, although Thomas Oil Company had been purchasing Gastite CSST from its vendor, Gas Equipment Company, and installing it for years, its employees were not trained and certified by Titeflex until shortly before they were deposed in late 2013. Plaintiff learned through discovery that,

2

shortly before the Thomas Oil Company depositions, Thomas Oil Company's vendor, Gas Equipment Company, arranged a Titeflex training program. Barfield Depo., p. 69. Contrary to Defendant's argument, this training program did not solely concern Titeflex's new "FlashShield" CSST product. It also included Gastite. *Id.* at 26.

In support of its claims, Plaintiff served the Subpoena at issue upon Thomas Oil Company's vendor, Gas Equipment Company, seeking documents concerning Titeflex's efforts, if any, to ensure that the Gastite CSST sold to Gas Equipment Company was used only by qualified installers, documents concerning any communications from Titeflex to Gas Equipment Company concerning the lightning hazardous associated with CSST, and documents concerning the Titeflex certification training arranged by Gastite of the Fall of 2013. Titeflex's attorneys have filed a motion to quash or modify the subpoena on behalf of Gas Equipment Company.

## II.    ARGUMENT AND CITATION TO AUTHORITY

Defendant Titeflex's attorneys argue on behalf of Gas Equipment Company that the subpoena should be quashed or modified because it asks for irrelevant information and imposes an undue burden upon Gas Equipment Company. In fact, the sole argument appears to be that the subpoena imposes an undue burden

3

<u>because</u> it seeks irrelevant information. The motion should be denied because the subpoena neither asks for irrelevant information nor imposes an undue burden.

As reflected in the case cited by Defendant, *Alig-Mielcarek v. Jackson*, 286 FRD 521, 525 (N.D.Ga. 2012), relevance is to be broadly construed with a bias in favor of wide-open discovery. "The moving party has the burden of proof to demonstrate the compliance with the subpoena would be unreasonable and oppressive." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (internal citations omitted). *See also Westinghouse Electric Corp. v. City of Burlington*, 351 F.2d 762, 766 (D.C. Cir. 1965)("The burden of proving that a subpoena *duces tecum* is oppressive is on the party moving for relief on this ground."). "The burden is particularly heavy to support a 'motion to quash as contrasted to some more limited protection." *Id.* "Generally, modification of a subpoena is preferable to quashing it outright." *Id.* In this case, neither quashing nor modification is appropriate because the subpoena seeks relevant information and does not overbroad or burdensome.

### A. Titeflex's Attorneys Erroneously Argue That The Installation Date Of The CSST, May 23, 2009, Constitutes A Cut Off Date For Relevant Information

The argument that the CSST installation date of May 23, 2009, serves as some sought of cut off date for relevant, discoverable information, is completely

4

without any basis in a law or fact. The subpoena seeks information concerning Titeflex's guidance to Gas Equipment Company regarding Titeflex's efforts, if any, to ensure that its Gastite CSST product was sold only to installers that had been trained and qualified by Titeflex to properly install the product. The measures that Titeflex undertook, both before and after installation, to ensure that the product was used only by qualified installers is relevant to this case. Although pursuant to Federal of Evidence 407, changes in Titeflex's efforts in this regard might not be inadmissible to prove negligence or defect, such evidence may well be admissible for other purposes, including but not limited to establishing the feasibility of establishing such measures earlier. Moreover, discoverability is not bound by the limits of relevance. The information sought need only be reasonably calculated to lead to admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). The argument that Plaintiff is only entitled to seek discovery regarding documents created before the installation of the CSST is completely without merit.

    **B.**    **Titeflex's Attorneys Erroneously Argue That This Concerns Only The Installation And Not The Sale Of The CSST**

Titeflex's attorneys also erroneously argue on behalf of Gas Equipment Company that this case concerns only the improper installation of the CSST by uncertified installers, not the sale of the product. See Brief in Support of Motion to Quash, at 9. This argument, however, is directly contradicted by the allegations in

5

the Amended Complaint, which contend that Titeflex was negligent in the development, production and <u>marketing</u> of the CSST, and that it "failed to warn the users and installers of its product of the substantial risk of fire or similar parallel presented by the normal use of the product." Amended Complaint, ¶¶ 20, 21(d). Whether or not Titeflex clearly communicated to Gas Equipment, and other suppliers, that the product should be installed only by certified installers is, and the measures that it undertook to ensure compliance with this guidance, is certainly relevant to these allegations.

**C. Titeflex's Attorneys Erroneously Argue That The Fall 2013 Certification Training Of Thomas Oil Company's Employees Is Irrelevant**

For the same reasons discussed above, the training provided by Titeflex to Thomas Oil Company's employers and Fall 2013 is certainly relevant to whether or not Titeflex implemented appropriate measures to ensure that the product was installed only by certified trainers. The information that Titeflex provides in its certification training concerning the lightning hazard associated with the product is also relevant. Further, if the information presented in Fall of 2013 is new or different from the information presented in earlier training, it raises the question as to whether Titeflex knew or reasonably should have known of this information earlier and taken measures to ensure that it was properly disseminated. Titeflex's

argument that this training is irrelevant simply because it occurred after the installation of the product is completely without merit.

In their brief, Titeflex's attorneys misleadingly argue that the Fall 2013 training "covered a new Titeflex product called FlashShield" which "is an entirely different product than Gastite CSST," suggesting that this training covered only the FlashShield CSST product, and not the Gastite CSST involved in this case. Titeflex's attorneys cite to page 26 of the Barfield deposition to support this argument, but failed to attach that page to their brief. The cited testimony, however, clearly shows that both the FlashShield product and the Gastite product were covered in the training:

> Q: Did they also go over the Gastite product in the class?
>
> A: They did.

Barfield Depo. p. 26.

Moreover, Barfield testified that Titeflex's representative provided information at this training that directly supports the allegations in Plaintiff's Complaint:

> Q: So what did they teach you about lightening [sic] strikes?
>
> A: I really don't understand what you're after there.

7

Q: Well, you said the bonding of the Gastite was required because of lightening [sic]?

A: That's my understanding; yes.

Q: Okay, is that what the teacher said when you took his class last month?

A: He told us that the new Gastite wasn't required to be bonded, but it's always a good idea. The old Gastite was required to be bonded, but it didn't start until a certain time. We didn't know about it and this, that, and the other thing. He showed us why it needed to be bonded.

Q: That was my question: You said he showed you why it needed to be bonded?

A: Yes.

Q: What did he say about why it needed to be bonded?

A: Because if it comes into contact with another piece of metal that isn't grounded, it's likely to arc.

Q: What appears when it arcs?

A: It blows a hole in it.

Q: What happens after that?

A: Worse case scenario, it catches fire.

Barfield Depo., pp. 28-29.

As shown above, the training provided by Titeflex in the Fall of 2013, as described by Bartlett, covered information that directly supports Plaintiff's theory of this case. The argument that it is somehow not relevant because it took place after the installation of the CSST at issue in this case is completely groundless.

### D. Gas Equipment Company Has Failed To Establish That The Subpoena Imposes That Undue Burden

The sole argument of Titeflex's attorneys appear to be that the subpoena imposes an undue burden because it seeks irrelevant information. As discussed above, however, all the information requested is clearly relevant to Plaintiff's claims that Titeflex negligently marketed the product and failed to warn users and installers of the product of its hazards. The argument that the subpoena is burdensome because it seeks irrelevant information simply does not hold water.

Gas Equipment Company has also failed to advance any affirmative evidence that obtaining their requested information from its records and producing it would impose an undue burden. It has not provided an affidavit establishing what would be required to look for the requested information and produce it. Although Titeflex's attorneys accurately state that the subpoena is not limited in time, it is otherwise extremely nearly tailored to discover only evidence relevant to this case. It seeks only information concerning Titeflex's efforts to restrict the sale of its CSST product to certified installers, and a single class arranged by Gas

9

Equipment Company in the Fall of 2013.  It should not be too difficult for Gas Equipment Company to ascertain whether or not Titeflex has a program to restrict the sale of its CSST product to certified installers and to obtaining the relevant documents.  Likewise, it is hard to see how obtaining documentation on a single, one day class in the Fall of 2013 should impose an undue burden upon the respondent.

## CONCLUSION

The subpoena served upon Gas Equipment Company seeks relevant, discoverable information related to Defendant Titeflex's marketing, sale, and warnings regarding the product at issue in this case.  Respondent has utterly failed to meet its burden to show that the subpoena imposes an undue burden upon Gas Equipment Company.  The Motion to Quash or Modify the Subpoena should be denied in its entirety.  Instead, the Court should enter an Order compelling Gas Equipment Company to comply with this Subpoena.

## Certification of Compliance

As required by Rule 7.1, the undersigned hereby certifies that the foregoing pleading has been prepared with Times New Roman font, size 14.

This 21st day of February, 2014.

                                                  s/ David M. Bessho
                                                  David M. Bessho
                                                  Georgia Bar No. 055784
                                                  Attorney for Plaintiff

Cozen O'Connor
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, Georgia  30308
Telephone:  (404) 572-2000
Facsimile:   (404) 572-2199
dbessho@cozen.com

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| COUNTRY MUTUAL INS. CO., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 2:13-cv-00108-RWS |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| TITEFLEX CORPORATION, and THOMAS OIL COMPANY, | : | |
| | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of February, 2014, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification and electronically serve a copy of such filing to the following attorneys of record: Philippa V. Ellis, Adam P. Ford, Owen, Gleaton, Egan, Jones & Sweeney, LLP, 1180 Peachtree Street, N.E, Suite 3000, Atlanta, GA 30309, Kelly M. Matayoshi, Farella Braun & Martel LLP, Russ Building, 235 Montgomery Street, San Francisco, CA 94104, and Thomas Martin and Arthur York, Swift, Currie, McGhee & Hiers, 1355 Peachtree Street, NE, Suite 300, Atlanta, GA 30309.

s/ David M. Bessho
David M. Bessho